## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Abby M. Mathieu, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2.      I am a Special Agent (SA) with Homeland Security Investigations (HSI), and have been since 2019.  Since September of 2019, I have been assigned to conduct investigations of crimes where computers and the Internet are used in the sexual exploitation of children, including (but not limited to) violations of 18 U.S.C. Sections 2252, 2251, 2422, and 2252A, which prohibit a person from knowingly producing, enticing a child to produce, transporting, receiving, distributing, soliciting, possessing ,or accessing with intent to view, in interstate or foreign commerce, or by using any facility or means of interstate or foreign commerce, child pornography, as defined in 18 U.S.C. Section 2256(8).  Section 2250 makes it a federal crime to travel in interstate or foreign commerce and fail to register in compliance with the Sex Offender Registration and Notification Act, if one if required to register under the act.  I have gained experience through training in seminars, classes, and daily work related to conducting these

types of investigations. Specifically, I have received formal training through HSI and other agencies regarding child pornography, pedophile behavior, collectors of obscene material, and Internet crime. I have participated in the execution of numerous search warrants, of which the majority has involved child exploitation and/or child pornography offenses. Many of the child exploitation and/or child pornography search warrants resulted in the seizure of computers, cell phones, electronic media, and other items evidencing violations of federal laws. I have participated in the execution of numerous search warrants for online accounts, such as email accounts, online storage accounts and other online communication accounts related to child exploitation and/or child pornography. I have also participated in numerous arrests and interviews of subjects involved with child exploitation and/or child pornography.

3.      As a federal agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

4.      The facts set forth in this affidavit are based on my personal knowledge, information obtained during my participation in this investigation, information from others, including law enforcement officers, my review of documents and computer records related to this investigation, and information gained through my training and experience.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 2250, 2251, 2422, and 2252A all have been committed by Jon Hall. There is also probable cause to search the information described in Attachment A for evidence related to these crimes, as described in Attachment B.

## PROBABLE CAUSE

6.      Jon Hall has been under state and federal investigation for child exploitation

offenses.  The background of this investigation is set forth in detail in the affidavits supporting

1:22-mj-00212-JCN and 1:23-mj-00056-JCN.   In addition, on December 28, 2022, SA Mathieu

issued a summons (HSI-BH-2022-051089) to Verizon Wireless. to produce subscriber

information and call records for the phone number 207-707-0298 (SUBJECT PHONE)

associated to Jon HALL and the iPhone X (evidence 2).

7.      On February 21, 2023, I became aware of an investigation by the Oxford County

Sheriff's Office that had been referred to the FBI.

8.      In November 2022, an Oxford County parent reported to OCSO that his son

("Minor N"), then 11 years old, has been engaged in a series of MMS chat exchanges on

Facebook messenger with a man posing as a 17-year-old from Tennessee.  The man was

persistent in requesting photos through Facebook messenger and photos of the child's penis and

of his masturbating.

9.      The chats between Facebook user "Zachary Hall" and Minor N began on May 18,

2022. HALL asks Minor N how old he is. The victim responds that he is 11. On May 19, 2022,

Hall asks Minor N, "how big is ur thing." Minor N responds, "idk I don't have ruler in my back

pocket." Hall tells Minor N, " lol ill buy u a gift card fur ur switch if  I can see."

10.     On May 19, 2022, at approximately 2:36 PM "Zachary Hall" says to Minor N,

"lemme see ur lap lol." Minor N says no. "Zachary Hall" says, "why not ill buy u stuff lol.. its

not like ur naked lol." Hall continues to question the victim and later in the day asks Minor N

what color his cum is and requests to see it and "Zachary Hall" tells him he will pay him. Minor

N sends "Zachary Hall" a photo of his underwear. "Zachary Hall" tells Minor N, "where ur this is supposed to show the whole pair lol and ill do 75$."

11.     At other points in the correspondence, "Zachary Hall" sends Minor N sexually explicit images of adult women.

12.     "Zachary Hall" communicates with Minor N through June 11, 2022 captured by screenshots. Throughout the entire communication, "Zachary Hall" continues to request photos of Minor N's penis. On June 11, 2022, Hall advises Minor N to show him down there with his underwear on and asks if Minor N is rubbing his "D." Minor N sends "Zachary Hall" a photo of what appears to be the child laying on a bed with camo sweat pants on. "Zachary Hall" then advises Minor N to take his sweat pants off.

13.     The Facebook users display name is "Zachary Hall" with ID number 100076236002403 (TARGET ACCOUNT). The profile photo on the "Zachary Hall" Facebook page is a black chevy Silverado with Tennessee License plate CYK-909. On January 12, 2023, Staff Operations Specialist (SOS), Nicole Shelton, provided FBI Special Agent (SA) Stephanie Rattigan with the following information: A query with the National Insurance Crime Bureau (NICB) Task Force Officer revealed that the current registrant of the known vehicle, a black Chevy Silverado, VIN # 2GCEK19T511337708, is His Seed, LLC with North Carolina plate # TJD3795. A query for that business entity showed the address 729 Harrisburg Dr. SW, Lenoir, SC 28645. A subsequent search for individuals associated with that address revealed a JON ALAN HALL II with a date of birth in 1993. Finally, a subsequent search for "Jon Alan Hall" revealed a JON ALAN HALL (HALL), DOB 11/17/1993, SSN 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, at 5361 Meadowlane Dr., Granite Falls, NC 28630, as of December 2022. Additional address history shows Hall was associated with 103 Hickory Hills Dr., Morganton, NC, as of April 2022.   An

additional search on the Maine Sex Offender Registry shows Hall is a Tier III Lifetime

Registrant. It shows his town of primary domicile is Morganton, NC, and his employer at the

time was Wright Contracting in Morganton, NC. The photo displayed on the sex offender

registry and in DMV records matches the photos of the subject provided to SA Rattigan by

Lieutenant Justin Brown of the Oxford County Sheriff's Office (OCSO). The photos provided to

SA Rattigan by OCSO were selfies that the subject took and sent to the victim via Facebook

messenger.

14.     On January 12, 2023, SOS Shelton submitted preservation requests for the

"Zachary Hall" Facebook account with UID 100076236002403 requesting to preserve records

from 01/01/2021 to the then-present.  SA Mathieu renewed this request on March 30, 2023.  The

preservation number is 7707956.

15.     Information obtained throughout the investigation I have been conducting of Jon

Hall, in connection with the Maine State Police, also confirmed Jon Hall's ownership and use of

the "Zachary Hall" Facebook account.  Specifically, SA Mathieu and Task Force Officer (TFO)

Taylor Bagley interviewed a different individual identified as Victim 1 (V1) on September 7,

2022. V1 advised the Agents that Jon Hall utilized a Facebook account with the alias name of

"Zachary Hall." V1 showed the Agents that Hall had attempted to message V1 from the

Facebook account. V1 knew it was Jon Hall's account because V1 had sold Hall the black truck

in this profile photo on a prior date. V1's girlfriend also advised that she had been contacted by

the same alias "Zachary Hall" profile and the individual using the alias account was Jon Hall

whom was attempting to contact her.

16.     My investigation of Hall indicated that Hall was engaged in similar conduct with

other male minors, using the Snap and Instagram platforms.  Specifically, cajoling or paying the

minors to send or produce sexually explicit images and videos. Hall is currently under indictment for production of child pornography relating to two such minors.

17.     The Facebook messages demonstrate that Hall attempted to use Minor N to engage in sexually explicit conduct to produce images of that conduct using a smart phone in violation of 18 U.S.C. 2251(a) and (e); that he enticed Minor N to engage in this conduct using the internet, which is a means and facility of interstate commerce, in violation of 18 U.S.C. 2422(b), and that he solicited child pornography from Minor N in violation of 18 U.S.C. 2252A(a)(3)(B) and thereby also attempted to receive and possess the child pornography in violation of 18 U.S.C 2252A(a)(2), (a)(5)(B), and (b).

18.     In addition, Jon Hall was a registered sex offender in all of 2022, and was required by federal law to register as such. This investigation has uncovered substantial evidence demonstrating that between early July and September 2022, Hall travelled in interstate commerce, including to Maine, changed his residence, and failed to update his registration as required by law. Because Hall appears to have been using the subject account for this entire period, the subject account data described in attachment B is also expected to constitute evidence of his knowing and intentional violation of 18 U.S.C. 2250.

19.     Based on the above, I have probable cause to believe, and I do believe that evidence of these crimes will be found in the information stored at Meta, Inc. Specifically, this evidence will include records showing that communications between the subject account and the Minor N's account occurred, as well as with other accounts Hall communicated with in the course of the conduct under investigation. In addition, records of communications and other records associated with the account will demonstrate that Hall was the owner of the account since its inception, and that he was the user of the account at the time of the offense. This

includes linking Hall to the account through content, messages, communications, and

photograph/videos, as well as links though other accounts used by the same person or on the

same devices, and data associated with locations where Hall was known to be at the times of the

offenses under investigation.

20.     To demonstrate Hall's continuous and consistent use of the account in the relevant

timeframe, Attachment B describes records starting three days before the first recorded chats and

continuing to the state of his second arrest on September 11 2022.

## BACKGROUND CONCERNING FACEBOOK[1]

21.     Meta owns and operates Facebook, a free-access social networking website that

can be accessed at http://www.facebook.com.  Facebook users can use their accounts to share

communications, news, photographs, videos, and other information with other Facebook users,

and sometimes with the general public.

22.     Meta asks Facebook users to provide basic contact and personal identifying

information either during the registration process or thereafter.  This information may include the

user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and

zip code), telephone numbers, screen names, websites, and other personal identifiers.  Each

Facebook user is assigned a user identification number and can choose a username.

23.     Facebook users may join one or more groups or networks to connect and interact

with other users who are members of the same group or network.  Facebook assigns a group

---

[1] The information in this section is based on information published by Meta on its Facebook
website, including, but not limited to, the following webpages: "Privacy Policy," available at
https://www.facebook.com/privacy/policy; "Terms of Service," available at
https://www.facebook.com/legal/terms; "Help Center," available at
https://www.facebook.com/help; and "Information for Law Enforcement Authorities," available
at https://www.facebook.com/safety/groups/law/guidelines/.

identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

24.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

25.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

26.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes.  Users can "tag" other users in a photo or video, and can be tagged by others.  When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

27.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video.  Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

28.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

29.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

30.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

31.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

32.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

33.     In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

34.     Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform.  For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

35.     Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

36.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

37.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

38.     Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

39.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

40.     Based on the foregoing, I request that the Court issue the proposed search warrant.

41.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

42.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

Respectfully submitted,

Abby Mathieu
Special Agent
Homeland Security Investigations

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date: Apr 11 2023

City and state: Bangor, ME

_Judge's signature_

John C. Nivison U.S. Magistrate Judge
_Printed name and title_

13